# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | CASE NUMBER 4:17-CR-00067 |
| v. | § | JUDGE MAZZANT/JUDGE JOHNSON |
| | § | |
| | § | |
| BYRON DANIEL CARRENO MERO (2), | § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Byron Daniel Carreno Mero's ("Defendant") Motion to Suppress (Dkt. 40). For the following reasons, the Court recommends Defendant's motion (Dkt. 40) be **DENIED**.

## I.     BACKGROUND

On or about March 30, 2017, Defendant was aboard the fishing boat, *Alejo*, located somewhere in the Pacific Ocean off the coast of South America. *See* Dkt. 40 at 1. The United States Coast Guard Cutter (hereinafter, the "*Mohawk*") acquired contact with the *Alejo*. *See id.* at 2. At the time of acquisition, the *Alejo* was three-hundred sixty-six (366) nautical miles north of the Galapagos Islands. *See id.* The *Mohawk* crew stopped the *Alejo* and its passengers, then boarded her. *See id.* The Coast Guard members detained the three crewmembers, including Defendant, and conducted drug detection IONSCAN tests on the *Alejo*, which allegedly resulted in positive tests for cocaine. *See* Dkt. 51 at 2. The three crewmembers were detained and loaded onto the *Mohawk. See id.*

According to Lieutenant Sarah R. Hohenberger ("Lieutenant Hohenberger"), a lieutenant with the United States Coast Guard, the crewmembers of the *Mohawk* learned on April 1, 2017, that the three crewmembers of the *Alejo* would be prosecuted by the Eastern District of Texas. *See*

1

Dkt. 61-1 at 2. Once this was known, the Coast Guard worked with Joint Agency Task Force South and the Eastern District of Texas to coordinate cutter and aircraft schedules to get the detainees to a location from where they could be transported to the Eastern District of Texas. *See id.* After coordinating with the government, the detainees were transferred to another United States Coast Guard Cutter (hereinafter, the "*Resolute*"), to transit through the Panama Canal on April 5, 2017. *See id.*

On April 11, 2017, the *Resolute* arrived at Guantanamo Bay, Cuba, in order to transit the detainees by aircraft to the Eastern District of Texas, which was twelve days after Defendant was initially detained. *See id.* at 3. Defendant was transferred to Drug Enforcement Agency ("DEA") custody and flown to McKinney, Texas, that same day. *See* Dkt. 51 at 3. Defendant landed in McKinney around 3:00 p.m., and was processed with Customs and Border Protection officers. *See id.* Around 5:30 p.m., DEA agents read Defendant his *Miranda* rights in Spanish, after which Defendant made alleged incriminating statements concerning his involvement with the cocaine jettisoned from the *Alejo*. *See id.* The next morning, Defendant made his initial appearance before the undersigned. *See id.*

## II.  <u>LEGAL STANDARD</u>

Rule 5 of the Federal Rules of Criminal Procedure requires that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge." FED. R. CRIM. P. 5(a)(1)(A). Rule 5 codifies the common-law rule of "prompt presentment," which required that an officer take an arrested person before a magistrate judge "as soon as he reasonably could." *Corley v. United States*, 556 U.S. 303, 306 (2009). In *McNabb v. United States*, 318 U.S. 332 (1943), and *Mallory v. United States*, 354 U.S. 449 (1957), the Supreme Court established a remedy for violations of the prompt-presentment requirement:

suppression of any confession obtained during a period of unreasonable delay. *Corley*, 556 U.S. at 309.

Congress modified the *McNabb–Mallory* framework by enacting 18 U.S.C. § 3501 in 1968. Section 3501(c) provides that a court may not suppress a confession made during a six-hour safe-harbor period solely due to a delay in presentment if the confession was made voluntarily. *See Corley*, 556 U.S. at 322. Section 3501(c) also permits for an extension of the six-hour safe harbor in any case in which the delay in bringing such a person before a magistrate judge is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest magistrate judge. Confessions provided outside of Section 3501(c)'s safe-harbor, however, remain subject to the *McNabb–Mallory* exclusionary rule. *Id.*; *see also United States v. Cantu–Ramirez*, 669 F.3d 619, 625 (5th Cir. 2012).

Accordingly, a *McNabb-Mallory* challenge requires a district court to make two determinations. *See United States v. Boche-Perez*, 755 F.3d 327, 336 (5th Cir. 2014). Initially, the court must determine the length of the delay. *See id.* The *McNabb–Mallory* clock starts to run from when the obligation to take the defendant before the federal magistrate judge arises, *see United States v. Alvarez–Sanchez*, 511 U.S. 350, 359 (1994), to the point at which the confession was rendered, *see, e.g., United States v. Mitchell*, 322 U.S. 65, 70 (1944); *United States v. Brown*, 459 F.2d 319, 324 (5th Cir. 1971). If that period is shorter than six-hours, or alternatively, any extension of the safe harbor "considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer," then the *McNabb–Mallory* inquiry ends. 18 U.S.C. § 3501(c).

But if the length of the delay is determined to fall outside of the Section 3501(c) safe harbor, the court must move to the second step of the analysis and examine whether the causes of the delay

were justifiable under the *McNabb–Mallory* cases. The defendant has the burden of demonstrating a *McNabb–Mallory* violation. *See, e.g., Brown*, 459 F.2d at 324; *Joseph v. United States*, 239 F.2d 524, 527 (5th Cir. 1957); *White v. United States*, 200 F.2d 509, 512 (5th Cir. 1952).

*McNabb–Mallory* case law rejects delays when they have either: (1) a non-existent; or (2) an unacceptable justification. A non-existent explanation (i.e., delay for delay's sake) is unacceptable under *McNabb–Mallory* because a delay for delay's sake is, by definition, unnecessary to any legitimate law enforcement purpose. *See, e.g., United States v. Yong Bing–Gong*, 594 F. Supp. 248, 254 (S.D.N.Y. 1984), *aff'd sub nom.*, *United States v. Bing–Nam*, 788 F.2d 4 (2d Cir. 1986). Similarly, a delay for the purpose of interrogation "is the epitome of [an] unnecessary delay." *Corley*, 556 U.S. at 308; *see also Rogers v. United States*, 330 F.2d 535, 538 (5th Cir. 1964). But beyond either unexplained delays or purposeful delays for criminal interrogations, courts have been "careful not to overextend *McNabb–Mallory*'s prophylactic rule in cases where there was a reasonable delay unrelated to any prolonged interrogation of the arrestee." *Boche-Perez*, 755 F.3d at 336 (citing *United States v. Garcia–Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009)).

Finally, in applying *McNabb-Mallory*, a district court should not resort to a "semanticism that obscures the facts" of a case. *Boche-Perez*, 755 F.3d at 338 (citing *United States v. Leviton*, 193 F.2d 848, 854 (2d Cir. 1951)). The overall reasonableness of a delay will vary city-to-city, case-to-case, justification-to-justification. *Boche-Perez*, 755 F.3d at 338 (citing *United States v. Hensley*, 374 F.2d 341, 349 (6th Cir. 1967); *Williams*, 273 F.2d at 797-98).

### III.   ANALYSIS

Considering the first *McNabb-Mallory* determination, the Court finds that the length of delay falls outside of the Section 3501(c) safe harbor. Defendant was detained in the Eastern

Pacific Ocean on March 30, 2017, and his appearance before the undersigned was on April 12, 2017, clearly outside of the six-hour safe-harbor period, which the Government does not dispute. *See* Dkt. 51 at 4. Thus, the only consideration before the Court is whether the causes of the Government's delay were justifiable under *McNabb-Mallory*, and the cases that follow.

The law is clear that "the government is not required to take the fastest possible route to the courthouse—just a reasonable one." *Boche-Perez*, 755 F.3d at 338. The "reasonableness" of a delay is not determined by "watching the clock" but rather by looking to the *cause* of the delay. *See United States v. Abu Khatallah*, 2017 WL 3534989, at *14 (D.D.C. Aug. 16, 2017). "This is particularly relevant for overseas arrests, as the distance between the site of arrest and the nearest magistrate often leads to unavoidable delays in presentment." *Id.*

According to Lieutenant Hohenberger, Defendant was detained on March 30, 2017. *See* Dkt. 61-1 at 2. The Coast Guard detaining Defendant did not learn that Defendant would be prosecuted by the Eastern District of Texas until April 1, 2017, two days after Defendant was detained. *See id.* On April 3, 2017, the *Mohawk* interdicted another go-fast vessel in the Eastern Pacific Ocean, and three more persons were detained because the new detainees allegedly had over one-thousand kilograms of cocaine on their vessel. *See id.* Two days later, on April 5, 2017, the *Mohawk* was unsuccessful in transporting the six detainees through Costa Rica because the United States is not currently authorized to transport detainees through Costa Rica. *See id.* Thus, the detainees were transferred to the *Resolute* in order to transit through the Panama Canal to arrive in Guantanamo Bay, Cuba, where an aircraft was arranged to transport Defendant to the Eastern District of Texas. *See id.* It took four days to transit from the Panama Canal to Guantanamo Bay. *See id.* at 3. After arriving at Guantanamo Bay, Defendant was promptly taken aboard an aircraft and brought before the undersigned. *See* Dkt. 51 at 4-5.

Ultimately, the Court finds the delay in presentment was reasonable. As the Government points out, the *Mohawk* did not receive communication regarding Defendant's ultimate destination until two days after he was detained; thus, it would be unreasonable for the *Mohawk* to make progress in any particular direction until this information was known. *See Williams v. United States*, 273 F.2d 781, 797 (9th Cir. 1959) (the government does "not have to make a bee line to the [nearest magistrate judge]"). Further, the Court finds the delay was reasonable because the Coast Guard needed to work with various departments of the government "to coordinate cutter and air craft schedules to get the detainees to a location from where they could be transported to the Eastern District of Texas." *See* Dkt. 61-1 at 2-3; *Boche-Perez*, 755 F.3d at 337 (recognizing that "the *McNabb-Mallory* doctrine tolerates delays related to legitimate law enforcement procedures," including "coordinating with multiple law enforcement agencies"); *United States v. Armando PortoCarrero-Angulo*, 2017 WL 3283256, at *8 (S.D. Cal. Aug. 1, 2017) ("Given the need to transport [the defendant] from a remote location on international water thousands of nautical miles away from the United States, coordinate his transfer among government authorities, and accommodate other logistical hurdles and environmental conditions, a 20-day delay between [the defendant's] detention and presentation is reasonable.").

Although the Court finds the motion should be denied, the Court notes that Defendant's arguments have some merit. At the hearing on the motion, Defendant testified only for purposes of the motion, and the Court finds that his testimony was credible. The United States Coast Guard boarded Defendant's small vessel and had him handcuffed. *See* Dkt. 56. From the time the Coast Guard arrived on the boat, Defendant was held in handcuffs. *See id.* When Defendant was transferred to the *Mohawk*, and continuing through his time on the *Resolute*, for a total of twelve days, Defendant was cable cuffed to both the vessel and the other detainees, and held on the

vessel's top deck, where he was exposed to the elements at sea. *See id.* Defendant was never told where he was being taken, even after asking, and did not learn of his destination until he finally arrived at Guantanamo Bay. *See id.* Further, after being detained for twelve days at sea, Defendant asserted that the special agent interviewed Defendant and was told that if Defendant would speak to him, Defendant would receive a lower sentence. *See id.*

Precedent dictates that although these conditions may reasonably put a defendant in a stressful, uncomfortable, and/or vulnerable position, the distance between the site of the arrest and the nearest magistrate judge leads to unavoidable delays in presentment. *See Abu Khatallah*, 2017 WL 3534989, at *14. Defendant's argument that technology has rendered the delay unreasonable is an excellent consideration; however, the Court is unable to determine the current technological equipment available to the coast guard cutters based on the evidence before the Court. The Court agrees that with the advancement of technology, the government should consider incorporating this technology, such as appearance by video, so that defendants may appear before a magistrate judge before actually arriving in the United States, to prevent such a delay. If the government is determined to detain defendants found in international waters and spend a long journey to bring them to the United States in order to prosecute them, some adjustments arguably should be made— particularly with the advancements in available technology. However, at this time, the Court finds Defendant has not met his burden in demonstrating a *McNabb-Mallory* violation on the instant record.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends Defendant's motion (Dkt. 40) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The parties are directed to Local Rule CV-72(c) for page limitations on objections.

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 27th day of September, 2017.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE